**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. <u>26-00338-01-CR-W-RK</u> |
| Plaintiff, | **COUNT ONE:**<br>**Honest Services Fraud**<br>18 U.S.C. §§ 1346, 1343, and 1349<br>NMT 20 Years' Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years' Supervised Release<br>Class C Felony |
| v. | |
| PHILIP ANDREW LEVOTA<br>[DOB: 10/23/1964] | **COUNT TWO:**<br>**Federal Program Bribery**<br>18 U.S.C. § 666(a)(1)(B)<br>NMT 10 Years' Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years' Supervised Release<br>Class C Felony |
| Defendant. | |

**COUNTS THREE and FOUR:**
**Travel Act**
18 U.S.C. § 1952(a)(3)
NMT 5 Years' Imprisonment
NMT $250,000 Fine
NMT 3 Years' Supervised Release
Class D Felony

**COUNT FIVE:**
**False Statements**
18 U.S.C. § 1001(a)(2)
NMT 5 Years' Imprisonment
NMT $250,000 Fine
NMT 3 Years' Supervised Release
Class D Felony

$100 Mandatory Special Assessment For Each Count

**I N D I C T M E N T**

<u>THE GRAND JURY CHARGES THAT</u>:

1.　　At all times relevant to this Indictment:

a. PHILIP ANDREW LEVOTA ("LEVOTA"), the defendant, was a resident of Jackson County, Missouri, which is within the Western District of Missouri.

b. Jackson County, Missouri, adopted a home-rule charter under the Missouri Constitution that was most recently amended by the citizens of Jackson County, Missouri, on November 6, 2018 ("Jackson County Charter"). Jackson County's legislative powers are vested in the Jackson County Legislature under Article II, and Jackson County's executive powers are vested in the Jackson County Executive under Article III. The government of Jackson County, which includes these legislative and executive branches, is a local government pursuant to 18 U.S.C. §§ 666(a)(1) & (d)(3). The Jackson County Executive is an agent of the government of Jackson County pursuant to 18 U.S.C. § 666(d)(1).

c. In the twelve-month period between May 1, 2025, and April 30, 2026, the government of Jackson County received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance. 18 U.S.C. § 666(b).

d. On October 13, 2025, LEVOTA was selected by the Jackson County Legislature, pursuant to legislative appointment under Article III, Section 4 of the Jackson County Charter to serve as the Interim Jackson County Executive until December 31, 2026.

2

**COUNT ONE**
18 U.S.C. §§ 1346, 1343, and 1349
(Honest Services Fraud)

**THE SCHEME**

2. From on or about March 16, 2026, to on or about March 31, 2026, in the Western District of Missouri, and elsewhere, LEVOTA devised and intended to devise a scheme and artifice to defraud the citizens of Jackson County, Missouri, and Jackson County, Missouri, of their intangible right to the honest and faithful services of the Jackson County Executive through bribery and the concealment of material information, and this scheme involved LEVOTA's promise to perform an official act as Interim County Executive, that is, to place INDIVIDUAL 1 and a colleague of INDIVIDUAL 1 in full-time positions in the government of Jackson County, in exchange for INDIVIDUAL 1 agreeing to abandon the 2026 election for Jackson County Executive.

**PURPOSE OF THE SCHEME**

3. The purpose of the scheme and artifice was for LEVOTA to secretly use his official position to enrich himself by soliciting, accepting, and agreeing to accept things of value from INDIVIDUAL 1 in exchange for a favorable official act, and for INDIVIDUAL 1 to enrich himself by secretly obtaining a favorable official act for himself and others through corrupt means.

**MANNER AND MEANS OF THE SCHEME**

4. It was part of this scheme and artifice to defraud that, at some point in or about March 2026, after having previously attested that he did not intend to enter the 2026 election for Jackson County Executive, LEVOTA began discussing the possibility of entering the race. At that time, other individuals had filed to run in the 2026 election for Jackson County Executive, including INDIVIDUAL 1.

3

5.    It was further part of this scheme and artifice to defraud that, at or around this same time, LEVOTA also had discussions with one or more individuals regarding what LEVOTA could offer to INDIVIDUAL 1 to induce INDIVIDUAL 1 to abandon the 2026 election for Jackson County Executive, including offering various jobs within the Jackson County government.

6.    It was further part of this scheme and artifice to defraud that, beginning on or about March 26, 2026, LEVOTA reached out to INDIVIDUAL 1 to induce INDIVIDUAL 1 to abandon the 2026 election for Jackson County Executive, and that in the course of this conversation which occurred on March 27, 2026, did in fact agree to perform an official act, that is, to appoint INDIVIDUAL 1 to the position of the Director of Jackson County Parks + Rec in exchange for INDIVIDUAL 1's agreement to abandon the 2026 election for Jackson County Executive.

7.    It was further part of this scheme and artifice to defraud that LEVOTA did transmit, and cause to be transmitted by means of wire communication in interstate or foreign commerce, any writings, signs, signals, and sounds, including the use of Apple's iMessage service.

8.    It was further part of this scheme and artifice to defraud that LEVOTA intended to hide, conceal, and cover up his activity and the nature and scope of his dealings with INDIVIDUAL 1. Additionally, it was part of this scheme and artifice to defraud that LEVOTA made at least one material misrepresentation, false statement, false pretense, and concealment of fact.

### EXECUTION OF THE SCHEME

9.    Beginning on or about Monday, March 16, 2026, LEVOTA began communicating with one or more individuals regarding what LEVOTA could offer to INDIVIDUAL 1 to induce INDIVIDUAL 1 to abandon the 2026 election for Jackson County Executive, including offering various jobs within the Jackson County government.

10. On Thursday, March 26, 2026, LEVOTA sent an iMessage to INDIVIDUAL 1, writing, "I think we should talk when you have a chance my friend," and the two agreed via iMessage to meet at a bar / restaurant in Kansas City, Missouri, during the afternoon of Friday, March 27, 2026, and did in fact meet there on that date. During this meeting on March 27, 2026, INDIVIDUAL 1 asked LEVOTA, "So what's goin' on Phil?" LEVOTA answered, "Well—you've backed me into a corner, that I'm going to have to file. Everybody in the world is telling me that I need to stay on, I need stability," and cast doubt on INDIVIDUAL 1's ability to win the nomination for Jackson County Executive. LEVOTA continued, "And this is our, this is our friends, and I think they've talked to you about it and told you about it too." INDIVIDUAL 1 replied, "Well, I don't know which friends, but nobody's talked to me," and LEVOTA responded by listing various people, including INDIVIDUAL 2.

11. LEVOTA mentioned other possible positions for INDIVIDUAL 1, including to get INDIVIDUAL 1 to go work for LEVOTA as his outreach community person. LEVOTA also told INDIVIDUAL 1, "I am concerned about … you running and losing … and if you run against me, and we have a race, then where's our relationship moving forward?" INDIVIDUAL 1 answered, "Well, I can tell you, that, umm, I met with [INDIVIDUAL 2] a couple weeks ago, and she mentioned to me on two different occasions—'cause I know where [INDIVIDUAL 2] is, I mean I know where she is—umm, she said well, Phil could just appoint you to a job, and I said, well, I don't know, I'm not interested in going back to [another Jackson County position] … I would consider a job, in, in the administration, like a directorship or something … but I am not interested in going back to [another Jackson County position]."

12. LEVOTA then asked, "Would you be considered, just to file, and then get—drop out in thirty days? 'Cause I don't know who's in there." After a brief discussion over whether INDIVIDUAL 1 would file for a separate elective office, LEVOTA asked, "Then if you don't

want to be [another Jackson County position], you don't want to be County Executive, it's still public service, it's still working every day, and you're out there." INDIVIDUAL 1 then said, "Phil, the deal is, I would rather have a job where I'm earning six figures … if I'm going to drop out—"

13. LEVOTA interrupted INDIVIDUAL 1, and said, "Did you know that's the smartest thing you've ever said to me?" INDIVIDUAL 1 asked, "What do you mean?" LEVOTA responded, "The smart people in politics are like, how do I get paid?" INDIVIDUAL 1 pointed out that he is relatively young and he could try to run for office again later in life, and LEVOTA said, "Again, again, where's this smart guy been?"

14. INDIVIDUAL 1 said, "I mean, for me to get out, it would have to be an appointment to a job—'cause [INDIVIDUAL 2] had mentioned that to me like two or three different times. She said, Phil can appoint you to something, and I said, well, I don't know, and she said, what do you want? And I said, well I don't know, I don't know. So, I mean, she had mentioned that to me two or three different times." LEVOTA responded, "There is no question, if you want a job, I would love to have you workin' there. I would love it … without a doubt. You tell me where you want to go, what you want to do."

15. INDIVIDUAL 1 said, "I mean, a great job would be, I'd love—I don't know how you'd get rid of her—I'd love to be the Parks Director." LEVOTA replied, "I can get rid of her on August 4th. I can—you can come in and be, and start workin', uhh, tomorrow, as, uhh, a department director doin' somethin' else, and our goal can be to move you to the Parks. And then once the election comes and goes I ain't gotta worry about pissing off any other [political allies] and then August 5th you're the Parks guy. And you can fucking—hell, you can stay there for eighty years."

16. After discussing various aspects of the Director of Jackson County Parks + Rec position, INDIVIDUAL 1 said, "The only thing is, Phil, I mean if I do this and drop out, I would

6

like to be appointed this year. I don't want to wait until after, after January and you get reelected— I mean when you get sworn in." After the two discussed the state of the Jackson County Executive race, LEVOTA said, "So there will not be a uh primary, a general, so after August 4th we're done. There's no more—I mean, of course there's an election but it'll be unopposed. Umm, I will tell you this, and I will tell anyone that will listen to me, and we will get all of our friends in the room, and I will say it out loud: You will be the Parks Director. There's no question. It's only when. I'm not waiting until next year, if—the latest I would wait is 'till the next day after the election."

17. INDIVIDUAL 1 told LEVOTA he could resign his current position immediately, and LEVOTA replied, "Yeah, yeah. But—but—I'd like ya' to start makin' money now if you'd want. Like if you want to, if you want to be, want to be, uhh, assistant director of something makin' a hundred thousand dollars until then? I don't mind doin' that either." INDIVIDUAL 1 asked, "What do you have open?" LEVOTA responded, "I'll find something open. H.R.'s open, uhhm … Finance is open. You can be the Director of Assessment for a little bit if you wanted to." LEVOTA also said, "I could create a position for you in the meantime."

18. INDIVIDUAL 1 then said, "The other thing too is, umm, I know, when I looked at uhh—[INDIVIDUAL 2] mentioned this to me—I think [the current Director of Jackson County Parks + Rec] makes about one-fifty. I'd like to make more money than that." LEVOTA immediately nodded and replied, "Okay. Well, uhh, yeah—I should make more, you should definitely make more." INDIVIDUAL 1 said, "I mean, I'd like to make probably like, one sixty-five, one seventy." LEVOTA replied, "Jesse James used a gun…when he robbed people," and then laughed. INDIVIDUAL 1 said, "I'm just sayin'—I, I, she-" and LEVOTA said, "One sixty-five's the number." INDIVIDUAL 1 said, "Okay, one sixty-five." LEVOTA then said, "Fair?" and INDIVIDUAL 1 responded, "Yes. Fair. I'd love to make one sixty-five as the Parks Director." LEVOTA closed his eyes, sighed, then said, "This is how things are supposed to be done

[INDIVIDUAL 1]. This is how—this is how it works." LEVOTA reaffirmed he would appoint INDIVIDUAL 1 the day after the primary, and that he would tell other individuals, including INDIVIDUAL 2, that he would be making INDIVIDUAL 1 the new Director of Jackson County Parks + Rec, and that "[i]t's not just the fact that I want him out of the race, I want him to work for me. I want him to be the guy that runs Parks."

19.     During the course of this conversation LEVOTA confirmed that INDIVIDUAL 1 would receive $165,000 for this Jackson County position. LEVOTA said, "I want you to be confident that it's going to happen. It's, it's almost too easy—you'd be good there. And you go, you go out there—fuckin' fire [Jackson County employee], whoever the fuck you want out there. Bring your people out there. People you trust, people who can do it." LEVOTA discussed the prospect of firing the current Director of Jackson County Parks + Rec who had served for decades, and said "I wasn't gonna pull the plug on her, now, especially now with campaign season, but—and we'll do it great, we'll do it nice. I'll talk to her and say, you're being replaced, umm, you can give your two weeks' notice so we can have a going away party, talk about how great you were and all that shit. Or, you could be fired." LEVOTA shrugged, and then said, "I mean, that's—that's not hard."

20.     INDIVIDUAL 1 then mentioned how he had gotten LEVOTA's message through an intermediary who is a lawyer. INDIVIDUAL 1 then said this lawyer "advised me that if I took a job with you that I should ask for a contract." LEVOTA said, "I'll give you a contract." INDIVIDUAL 1 said, "So that way if you change your mind in your first term—" and LEVOTA interrupted and said, "Yeah, yeah yeah yeah," and INDIVIDUAL 1 continued, "that I'm, I'm at least paid out for the remainder of my contract." LEVOTA replied, "Tell [the lawyer] I appreciate the advice. Done. Well, because, [a recently terminated Jackson County employee] didn't have a contract." Then, speaking in the third person, LEVOTA said, "And Phil got to cut her throat."

LEVOTA continued, "She tried—she tried to sue, and ain't got nothin'." INDIVIDUAL 1 said, "If you appoint me I would like to have a contract." LEVOTA said "Yep," nodded, and then said, "Fuck—again, Jesse James." INDIVIDUAL 1 replied, "I'm just sayin'," and LEVOTA said, "I'm joking with you. This is a negotiation." INDIVIDUAL 1 said, "[The lawyer] advised me of that, you should at least have a contract so that way if they fire you they can pay you at least two years at your current salary. And I said, I should ask for that. Thank you for letting me know that." LEVOTA nodded in response to these statements, and INDIVIDUAL 1 said, "That's why I have friends that are lawyers." LEVOTA said, "Right, right. And—and that's not unreasonable at all." LEVOTA and INDIVIDUAL 1 also discussed who INDIVIDUAL 1 would report to upon becoming Director of Jackson County Parks + Rec.

21. During this conversation, LEVOTA also agreed to secure an additional Jackson County position for a colleague of INDIVIDUAL 1. INDIVIDUAL 1 said to LEVOTA, "And the other thing I do need, this is the secondary request-" and LEVOTA interrupted and said, "Oh Jesus Christ," and INDIVIDUAL 1 continued, "…this is the secondary issue. Umm, I need to find a place for [colleague of INDIVIDUAL 1]." LEVOTA asked, "Who's [colleague of INDIVIDUAL 1]?" and INDIVIDUAL 1 told LEVOTA. LEVOTA said, "Oh, okay." INDIVIDUAL 1 said, "I would like for you to find a place for her." LEVOTA responded, "Well, she oughtta be your fuckin' person at Parks." INDIVIDUAL 1 replied, "Oh I didn't know I could do that." LEVOTA rolled his head and raised his eyebrows, and INDIVIDUAL 1 said, "See, I didn't know that. I honestly didn't know that." LEVOTA then said, "I would not put someone as Director without having someone as their right-hand person." LEVOTA also said, "Well…let's make that, let's be crystal clear about this: I think the best place for her, if you, if you like her and she's your trusted person, is with you there. I will tell you, she will go somewhere. We will put her somewhere. I would like to put her there." INDIVIDUAL 1 said, "I just want to make sure she's taken care of," and said he

9

wanted this colleague to make a bit more money. As LEVOTA was paying the bar / restaurant bill, he nodded and said, "Okay." INDIVIDUAL 1 mentioned he wanted to secure his colleague more money but she didn't have to necessarily work with INDIVIDUAL 1 at Jackson County Parks + Rec. LEVOTA responded, "Alright…so you're telling me you want her to land somewhere….okay," and INDIVIDUAL 1 replied, "At more—at a higher salary so she can tap out at her," and LEVOTA nodded.

22.    At the end of their meeting, LEVOTA said, "Well, you won—you won this, this fucking meeting, you fucking won here." INDIVIDUAL 1 said, "Nah, I don't know about that. So I'm glad that, Parks Director, one sixty-five, my contract," and LEVOTA nodded and said, "Yep." INDIVIDUAL 1 continued, "and [INDIVIDUAL 1's Jackson County colleague] will land somewhere at a higher salary." LEVOTA and INDIVIDUAL 1 discussed a future conversation they would have with third parties, including INDIVIDUAL 2, to announce the details of this arrangement. LEVOTA said he would call them tomorrow, and INDIVIDUAL 1 said, "Well, why don't we wait 'till Monday because I want to discuss it with my wife." LEVOTA agreed, and said, "So you tell me, done deal, and then I get them on the phone, here's the deal."

23.    LEVOTA subsequently took steps to hide, conceal, and cover up his activity and the nature and scope of his dealings with INDIVIDUAL 1, including:

    a. On the morning of Monday, March 30, 2026, INDIVIDUAL 1 sent an electronic communication via Apple iMessage to LEVOTA, writing, "Good morning, Phil, after discussing matters with my wife, I am agreeing to withdraw from the race in return for the positions and salary discussed." LEVOTA responded via Apple iMessage, writing, "Let's be clear, you are not withdrawing in return for anything. If you choose to withdraw because that's what's best for Jackson County then that's your decision. I always

10

want to have quality people working for the county so I would love to talk to you about that in the future."

b. Immediately after sending that text to INDIVIDUAL 1, LEVOTA placed a telephone call to INDIVIDUAL 1. During this call, INDIVIDUAL 1 said that he was "just following up with our conversation—I wasn't trying to, I was just literally following up from our conversation we had." LEVOTA responded, "I know, and and and uh, to, say that you're withdrawing in exchange for specific things, that's not what we're saying in writing … we're saying, is that you are withdrawing is in the best interest of Jackson County, and we're gonna sit down with, uhh, these three people we're going to talk about your future and we're gonna get that laid out. But—that's that's not a good thing to have in writing. Does that make sense?" INDIVIDUAL 1 apologized, saying, "I'm sorry, I was literally just responding." LEVOTA replied, "I know you were, I know you were … but when you and I talk, and you and I talk live, people talk live, you can get to talk about other stuff. When you have text messages things going around saying certain things, that's where people can somewhat get in trouble."

c. Later that morning, LEVOTA sent a group text message to INDIVIDUAL 1, INDIVIDUAL 2, and two others, writing, "I'd like for the four of us to get together Wednesday or Thursday and talk about the future of Jackson County. [INDIVIDUAL 1] has told me that he is considering withdrawing from the county Executive's race. I'm waiting to see what happens at the end of closing tomorrow. If [INDIVIDUAL 1] is not pursuing elected office

11

again, I'd like to talk about making sure that we utilize [INDIVIDUAL 1]'s experience in the future at the County and would like all of your insight."

24.    Apple iMessage is a facility in interstate commerce, and communications sent between Apple account users via iMessage are transmitted in interstate commerce, in that Apple Inc. does not maintain servers within the state of Missouri.

25.    On Tuesday, March 31, 2026, LEVOTA called INDIVIDUAL 1, and the two discussed the changed dynamics of the 2026 election for Jackson County Executive. LEVOTA mentioned the additional candidates that filed to enter the race, and said, "I just think today, you don't get out today. You can always get out another week, and we circle our wagons and figure things out, still get together on Thursday and talk about it, but once you're out, you're out. You can always just go down and file within thirty days, you can still go down and get out." LEVOTA and INDIVIDUAL 1 discussed the dynamics of INDIVIDUAL 1 remaining in the Jackson County Executive race longer to affect other potential candidates, and then LEVOTA said, "So I'd like to have the pressure of the numbers on there. Doesn't change anything with you and I on your future and what I want you to do and what you want to do, with me, but I gotta be here too."

26.    Between on or about March 16, 2026, to on or about March 31, 2026, in the Western District of Missouri and elsewhere, the defendant, PHILIP ANDREW LEVOTA, in furtherance of and for the purpose of executing the scheme described above, and attempting to do so, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, specifically, a communication via iMessage to INDIVIDUAL 1 on or about March 30, 2026, all in violation of Title 18, United States Code, Sections 1343, 1346, and 1349.

12

## COUNT TWO
### 18 U.S.C. § 666(a)(1)(B)
### (Federal Program Bribery)

27. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in Paragraphs 1 and 9 through 25 of this Indictment as if fully set forth in this Count.

28. Beginning on or about March 26, 2026, and continuing to on or about March 31, 2026, in the Western District of Missouri, and elsewhere, the defendant, PHILIP ANDREW LEVOTA, as an agent of the government of Jackson County, Missouri, a local government that, in the twelve-month period between May 1, 2025, and April 30, 2026, received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of any person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the government of Jackson County, Missouri, involving any thing of value of $5,000 or more, that is, an agreement for INDIVIDUAL 1 to abandon the 2026 election for Jackson County Executive in exchange for LEVOTA placing INDIVIDUAL 1 and a colleague of INDIVIDUAL 1 in full-time positions in the government of Jackson County, all in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT THREE
### 18 U.S.C. § 1952(a)(3)
### (Travel Act)

29. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in Paragraphs 1 and 9 through 25 of this Indictment as if fully set forth in this Count.

30. On or about March 26, 2026, in the Western District of Missouri, and elsewhere, the defendant, PHILIP ANDREW LEVOTA, used and caused the use of a facility in interstate commerce, namely, the iMessage service via his cellular telephone assigned telephone number

13

(XXX) XXX-0028, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, bribery in violation of RSMo. 576.020 (public servant acceding to corruption), and thereafter, the defendant did perform and attempt to perform an act to carry on and facilitate the promotion and carrying on of said unlawful activity, all in violation of Title 18, United States Code, Section 1952(a)(3).

### COUNT FOUR
18 U.S.C. § 1952(a)(3)
(Travel Act)

31.    The Grand Jury re-alleges and incorporates by reference the factual allegations contained in Paragraphs 1 and 9 through 25 of this Indictment as if fully set forth in this Count.

32.    On or about March 30, 2026, in the Western District of Missouri, and elsewhere, the defendant, PHILIP ANDREW LEVOTA, used and caused the use of a facility in interstate commerce, namely, the iMessage service via his cellular telephone assigned telephone number (XXX) XXX-0028, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, bribery in violation of RSMo. 576.020 (public servant acceding to corruption), and thereafter, the defendant did perform and attempt to perform an act to carry on and facilitate the promotion and carrying on of said unlawful activity, all in violation of Title 18, United States Code, Section 1952(a)(3).

### COUNT FIVE
18 U.S.C. § 1001(a)(2)
(False Statement or Representation Made to a Department or Agency
of the United States)

33.    The Grand Jury re-alleges and incorporates by reference the factual allegations contained in Paragraphs 1 and 9 through 25 of this Indictment as if fully set forth in this Count.

14

34. On the morning of Monday, April 6, 2026, LEVOTA was approached by Special Agent A and Special Agent B, who are two Special Agents with the Federal Bureau of Investigation that were investigating this matter. Special Agent A and Special Agent B provided LEVOTA with a letter advising him of the investigation.

35. LEVOTA advised Special Agent A and Special Agent B that he needed more context as to the nature of the investigation. Later that morning, this additional context was provided by Special Agent A and Special Agent B, as well as by attorneys for the government. After LEVOTA was provided additional context for the nature of this investigation, LEVOTA said, "There have been people circulating about what I would do with [INDIVIDUAL 1] if he withdrew, and my position has always been that I could beat [INDIVIDUAL 1] easily in the race. Umm, he had a meeting, with me, umm, I don't trust anything he would ever say, uhh, he, he has not withdrawn. I have not, uhh, tell him, him draw- he's getting a certain thing. I was actually having a meeting, to get people together, with him, to say, you you you think you're getting exchange for something and for me to give you something in the future if you get out, and that's just not the case. Frankly, it's better if you stay in the race." LEVOTA also said, "There's—there was no, uhh, intent to do anything for [INDIVIDUAL 1] at this time talking about the future about what he would do, umm, is not something that I ever committed to." Later in the discussion, LEVOTA also said, "I am confident, and I'd like to see what it is, confident that no deal has been done to do that."

36. On or about April 6, 2026, in the Western District of Missouri, and elsewhere, the defendant, PHILIP ANDREW LEVOTA, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to Federal Bureau of Investigation Special Agent A and Special Agent B that he had not agreed to provide

15

INDIVIDUAL 1 with a future position in the government of Jackson County, Missouri, in exchange for INDIVIDUAL 1 abandoning the 2026 election for Jackson County Executive, and that no deal had been made. The statements and representations were false because, as LEVOTA then and there knew, LEVOTA had formed a deal with INDIVIDUAL 1 regarding INDIVIDUAL 1's future and had agreed to appoint INDIVIDUAL 1 to the position of the Director of Jackson County Parks + Rec in exchange for INDIVIDUAL 1's agreement to abandon the 2026 election for Jackson County Executive, all in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL.


July 16, 2026
DATE

*SIGNATURE ON FILE WITH USAO*
FOREPERSON OF THE GRAND JURY

*/s/Patrick D. Daly*
Patrick D. Daly
Senior Litigation Counsel

*/s/Nicholas P. Heberle*
Nicholas P. Heberle
Senior Litigation Counsel

*/s/J. Benton Hurst*
J. Benton Hurst
Assistant U.S. Attorney