**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 26-00338-01-CR-W-RK |
| | ) | |
| PHILIP A. LEVOTA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LEVOTA'S MOTION TO DISMISS COUNTS ONE THROUGH FOUR FOR FAILURE TO STATE AN OFFENSE WITH MEMORANDUM IN SUPPORT**

COMES NOW Defendant Philip Andrew LeVota, by and through undersigned counsel pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) and the Fifth and Sixth Amendments to the United States Constitution and respectfully moves this Court to dismiss Counts One through Four of the Indictment for failure to state an offense. Even accepting every factual allegation as true, the Indictment describes an exchange of one political act for another, to wit, a political rival's offer to leave a Democratic primary election in return for a County government appointment. That is political logrolling, not bribery. Because the acts alleged in the Indictment, even taken as true, do not constitute honest-services fraud (Count One), federal-program bribery (Count Two), or the Travel Act offenses that depend on state bribery (Counts Three and Four), these counts should be dismissed. In support, defendant states as follows:

## MEMORANDUM IN SUPPORT

### Summary of the Argument

The Indictment charges Mr. LeVota, the Interim Jackson County Executive, with honest services fraud, federal program bribery, and two travel act violations, based on a political deal, not

a bribe. It alleges that Philip LeVota, as Interim Jackson County Executive, agreed to appoint his Democratic Party primary rival to a County directorship if the rival abandoned the 2026 Democratic primary race for Jackson County Executive. (Indict. ¶ 2). For purposes of this motion only, Mr. LeVota accepts the Indictment's allegations as true. Both halves of that exchange are political acts: a Democrat rival's decision to leave a primary election race in return for Mr. LeVota's agreement to recommend the rival's appointment to a County directorship position. The Indictment does not allege that Mr. LeVota solicited or accepted any payment or personal enrichment from INDIVIDUAL 1 or anyone else. (Indict. ¶ 4). The jobs and salary at the center of the alleged deal were to go to the rival, not to LeVota. What the Indictment charges is political logrolling — the everyday trading of political acts that American law has never treated as a federal crime.

## Factual Allegations

On October 13, 2025, the Jackson County Legislature selected LeVota to serve as the Interim Jackson County Executive until December 31, 2026. (Indict. ¶ 1). The Indictment alleges that Jackson County is a "local government," and its Executive an "agent" of that government, within the meaning of 18 U.S.C. § 666, and that the county received federal benefits exceeding $10,000 during the relevant period. (Indict. ¶ 1).

On or about March 2026, after previously announcing that he did not intend to run, LeVota, a Democrat, began discussing entering the 2026 primary race for County Executive, in which INDIVIDUAL 1 and others had already filed. (Indict. ¶ 4). The Indictment alleges that LeVota discussed with others what he could offer INDIVIDUAL 1 to induce him to leave the race, including various county jobs. (Indict. ¶ 5; Indict. ¶ 9). On March 26, 2026, LeVota sent

INDIVIDUAL 1 an iMessage proposing that they talk, and the two met at a bar and restaurant in Kansas City the following day. (Indict. ¶ 10).

At that meeting, the Indictment alleges, INDIVIDUAL 1 requested that he be appointed to a county directorship position, a position long held by an incumbent. (Indict. ¶ 15; Indict. ¶ 16). They discussed compensation, and the Indictment alleges they arrived at a salary of $165,000. (Indict. ¶¶ 17-18). LeVota also allegedly agreed to secure a county position for a colleague of INDIVIDUAL 1. (Indict. ¶ 21).

On March 30, 2026, INDIVIDUAL 1 sent LeVota a message stating that he was "agreeing to withdraw from the race in return for the positions and salary discussed." (Indict. ¶ 23). LeVota responded, "Let's be clear, you are not withdrawing in return for anything[,]" and, on a follow-up call, cautioned against describing the withdrawal as being "in exchange for specific things[.]" (Indict. ¶ 23). The next day, LeVota told INDIVIDUAL 1 not to withdraw that day and noted that INDIVIDUAL 1 could file and later withdraw within thirty days. (Indict. ¶ 25).

On these allegations, the Government charges LeVota with honest services fraud premised on a March 30, 2026 iMessage (Indict. ¶ 26); federal program bribery premised on the same withdrawal-for-jobs agreement (Indict. ¶ 28); and two Travel Act counts, each predicated on "bribery in violation of RSMo. 576.020[.]" (Indict. ¶ 30; Indict. ¶¶ 31-32). For purposes of this motion only, LeVota accepts these allegations as true and contends that they do not state a federal offense.

**Legal Standard**

A defendant may move before trial to dismiss a count that fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). The court reviews the indictment *de novo*, "accept[s] the allegations stated in the indictment as true," and asks "whether they can form the basis of the charged offense," a question that "turns on the elements of that offense." *United States v. Hansmeier,* 988 F.3d 428,

436 (8th Cir. 2021); *United States v. Sholley-Gonzalez*, 996 F.3d 887 (8th Cir. 2021). To withstand a motion to dismiss, an indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged. *See United States v. Polychron*, 841 F.2d 833, 834 (8th Cir.1988), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988). As a result, if the acts, which are alleged in the Indictment, do not constitute a criminal offense, then the Indictment should be dismissed. *See, e.g., United States v. Dillard*, 2009 WL 3711564, *4 (E.D. Ark Nov. 4, 2009) (indictment fails to allege an offense under 18 U.S.C. § 1035 because the United States Railroad Retirement Board program for disability benefits is not a "health care benefit program" as defined by the statute.); *United States v. Steffen*, 687 F.3d 1104, 1114-15 (8th Cir. 2012) (dismissal affirmed because the alleged conduct "was undoubtedly a breach of contract" that "d[id] not fit the framework" of the fraud statute, so "the facts set forth in the indictment failed to allege the offense."). *See also United States v. Todd*, 446 F.3d 1062, 1067–69 (10th Cir. 2006) (district court may dismiss charges before trial where "undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted"); *See also United States v. McKee,* 68 F.4th 1100 (8th Cir. 2023) (indictment dismissed because the conduct alleged was not within the prescriptive reaches of the statute and thus not within the court's jurisdiction as alleged.).

Where, as here, and for the purposes of this motion, the defendant does not dispute the conduct alleged but contends that the conduct does not constitute the charged offense, the court resolves the question by interpreting the statute. *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019). Courts have recognized that if the government has applied an erroneous interpretation to the statutory language in an attempt to reach actions not prohibited by the statute, the indictment is subject to dismissal. *United States v. Brigham Oil & Gas, L.P.*, 840 F. Supp. 2d 1202 (D.N.D.

2012); *United States v. McKee*, 68 F.4th 1100 (8th Cir. 2023). The Supreme Court has distinguished legal questions like whether "conduct set forth in an indictment violates the statute" from a challenge to "the sufficiency of th[e] proof," which is "not [a] 'legal defense[]' … capable of being resolved before trial." *Sanabria v. United States*, 437 U.S. 54, 77 (1978). And the Eighth Circuit permits pretrial resolution where the relevant facts are undisputed and "a trial of the general issue would serve no purpose." *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025). Here, Mr. LeVota asks the Court to decide a legal question based on the Indictment's stated allegations: whether an agreement to trade a Democratic Party rival's public withdrawal from a Democratic primary election for a government appointment is a federal crime. It is not.

## ARGUMENT

### I. Count One and Count Two Fail to State an Offense in that a County Appointment in Exchange for a Candidate's Withdrawal from a Primary Election Race Is Political Logrolling, Not Bribery.

At most, the conduct the Indictment alleges is a political trade, not a bribe, and that is a question this Court may resolve pretrial. Where a defendant does not dispute the alleged conduct but contends that the conduct is not a federal crime, the court decides the question by interpreting the statute rather than by weighing evidence. *United States v. Flute*, 929 F.3d at 587. The Eighth Circuit confronted that posture in *Flute*, where the defendant "argued that even if she had engaged in the conduct alleged in the Indictment, the conduct did not constitute the charged offense under federal law." *Id*. at 586. The Supreme Court has likewise treated "conduct set forth in an indictment violates the statute" as a legal question, unlike a challenge to "the sufficiency of th[e] proof." *Sanabria v. United States*, 437 U.S. at 77. The Supreme Court has articulated several background principles that courts apply when determining the prescriptive reach of federal criminal statutes. In *Bond v. United States*, 572 U.S. 844 (2014), the Court held that a statute implementing the

Chemical Weapons Convention did not reach an amateur attempt by a jilted wife to injure her husband's lover with chemical irritants. The Court reasoned that Congress legislates against the backdrop of certain unexpressed presumptions, including the presumption that federal statutes do not dramatically intrude upon traditional state criminal jurisdiction absent a clear statement. The Court explained that when a statute's application would convert an astonishing amount of traditionally local criminal conduct into a matter for federal enforcement, courts should hesitate before concluding that Congress intended such a result. *Bond v. United States*, 572 U.S. at 856-57.

Because LeVota accepts the Indictment's allegations as true for purposes of this motion and challenges only whether they describe an offense, and because the pertinent facts are undisputed so that "a trial of the general issue would serve no purpose," the motion is properly decided on the pleadings. *United States v. Grubb*, 135 F.4th at 607.

The dispositive point is that trading one official or political act for another is categorically different from a bribe. As the Seventh Circuit explained in *Blagojevich*, a "proposal to trade one public act for another, a form of logrolling, is fundamentally unlike the swap of an official act for a private payment." *United States v. Blagojevich*, 794 F.3d 729, 734 (7th Cir. 2015). A "political logroll" is "the swap of one official act for another," such as a legislator trading a vote on milk-price supports for a vote on pollution controls, or a President appointing an ambassador at a senator's request in exchange for a confirmation vote. *Id.* at 735. The court recognized that "[g]overnance would hardly be possible without these accommodations." *Id.* A "proposal to appoint a particular person to one office … in exchange for someone else's promise to appoint a different person to a different office," the court observed, "is a common exercise in logrolling." *Id.*

More specifically, "The events leading to Blagojevich's arrest began when Barack Obama, then a Senator from Illinois, won the election for President in November 2008. When Obama took office in January 2009. Blagojevich would appoint his replacement to serve until the time set by a writ of election." *Id*. at 733. The President-elect was not willing to make the deal, but "Blagojevich asked for an appointment to the Cabinet or for the President-elect to persuade a foundation to hire him at a substantial salary after his term as Governor ended, or find someone to donate $10 million and up to a new "social-welfare" organization that he would control." *Id*. at 733. Because the jury instructions allowed for a conviction on this theory that "concern Blagojevich's proposal to appoint Valerie Jarrett to the Senate in exchange for an appointment to the Cabinet" those convictions were set aside. *Id.* at 734, 735.

The Indictment alleges precisely that kind of political trade. It charges that LeVota agreed to appoint INDIVIDUAL 1 to a county directorship position in exchange for INDIVIDUAL 1's agreement to abandon the 2026 election for Jackson County Executive. (Indict. ¶ 6). The alleged exchange does not include or even contemplate a private payment to LeVota. The county positions and the salary the Indictment describes would be conferred on INDIVIDUAL 1 and a colleague, not on LeVota, and the only thing LeVota is alleged to have received in return is the withdrawal of a Democrat rival from the same party primary election. (Indict. ¶ 21; Indict. ¶ 28). That is a logroll, not a bribe.

Political logrolling is beyond the prescriptive reach of the honest-services statute. In *Skilling v. United States*, the Supreme Court confined 18 U.S.C. § 1346 to "the bribe-and-kickback core of the pre-*McNally* case law." *Skilling v. United States*, 561 U.S. 358 (2010). Applying that limitation to a materially identical appointment-for-political-act trade, the Seventh Circuit held that "*Skilling* holds that only bribery and kickbacks violate § 1346[,] [s]o unless political logrolling

is a form of bribery, which it is not, § 1346 drops out." *United States v. Blagojevich*, 794 F.3d at 736. As that court put it, the holding of *Skilling* "prevents resort to § 1346 to penalize political horse-trading." *Id*. Count One therefore fails.

The same conclusion follows for § 666. The Seventh Circuit explained that it "would not be plausible to describe a political trade of favors as an offer or attempt to bribe the other side" under that statute. *Id*. quoting *United States v. Hawkins*, 777 F.3d 880 (7th Cir. 2015). It also recognized, drawing on *Cleveland v. United States*, 531 U.S. 12 (2000), that a public office "belongs to the people, not to the incumbent (or to someone hankering after the position)," and that a public job "is not 'property' from the employer's perspective," "not owned by the person with appointing power," and "cannot be deeded over." *Id*. at 735-36. The Government cannot rescue these counts by pointing to INDIVIDUAL 1's prospective salary. The line the case law draws is between a public office or political concession, which is logrolling, and a private financial payment to the official, which is bribery. In *Siegelman* the official's § 666 conviction rested on a $500,000 cash campaign donation exchanged for a specific board seat. *United States v. Siegelman*, 640 F.3d 1159, 1164 (11th Cir. 2011). Here the potential appointed position flows to INDIVIDUAL 1, not LeVota, and the only thing LeVota receives is a Democratic primary race cleared of one single candidate amongst an otherwise populated field of Democratic candidates. (Indict. ¶ 4). Counts One and Two therefore allege a political trade rather than a bribe and should be dismissed.

## II. Count Two Fails to State Federal Program Bribery Under § 666.

Count Two fails for two independent reasons. Section 666 requires allegations constituting a bribe, not a political understanding; and the § 666(c) safe harbor exempts the public salary at issue. Either of these reasons is a basis to dismiss Count Two.

### A. Section 666 Requires a Prospective Corrupt Bribe, Not a Political Understanding.

Count Two fails because § 666 punishes bribes, and the Indictment pleads a political accommodation that even the allegations show was not a corrupt exchange. The Supreme Court held in *Snyder v. United States* that "§ 666 is a bribery statute and not a gratuities statute." *Snyder v. United States*, 603 U.S. 1, 10 (2024). The statute "shares the defining characteristics of § 201(b)'s bribery provision: the corrupt state of mind and the intent to be influenced in the official act." *Id*. at 12. A violation therefore requires a prospective corrupt agreement: "[a] state or local official can violate § 666 when he accepts an up-front *payment* for a future official act or agrees to a future *reward* for a future official act." *Id*. at 19. (Emphasis added).

The Indictment does not describe that corrupt bargain; it describes a negotiated political arrangement. A candidate's withdrawal from a primary election is a political event, not money or property accepted by the official. The county positions were to be conferred on INDIVIDUAL 1 and a colleague, not on LeVota. (Indict. ¶ 6; Indict. ¶ 21). The Third Circuit held on closely analogous facts that "Congress did not intend § 666 to cover" the corrupt solicitation of political services in exchange for municipal jobs, reasoning that such patronage is "different in kind" from the conduct Congress targeted. *United States v. Cicco*, 938 F.2d 441, 446 (3d Cir. 1991). The Seventh Circuit agreed that it "would not be plausible to describe a political trade of favors as an offer or attempt to bribe the other side." *United States v. Blagojevich*, 794 F.3d at 736. Summarizing *United States v. Thompson*, the *Blagojevich* court explained "the interest in receiving a salary from a public job is not a form of private benefit for the purpose of federal criminal statutes." *United States v. Blagojevich*, 794 F.3d at 737.

Because the allegations charge a political accommodation rather than a corrupt quid pro quo, Count Two does not state a § 666 offense. *Snyder v. United States*, 603 U.S. at 12.

### B. The § 666(c) Bona Fide Salary Safe Harbor Applies.

Count Two independently fails because § 666(c) exempts the very compensation the Government treats as the corrupt benefit. By its terms, the statute "does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666. The Seventh Circuit applied that exemption to a political job-trade in *Blagojevich*, holding that "[c]ompensation for a job by someone other than a ghost worker is a 'bona fide salary'—and, as we've pointed out, the 'usual course of business' in politics includes logrolling." *United States v. Blagojevich*, 794 F.3d at 736. The court added that "[t]he exclusion in § 666(c) for bona fide employment also applies no matter who gets the job," and, summarizing *Thompson*, that a public-job salary "is not a form of private benefit for the purpose of federal criminal statutes." *Id*. at 737.

Here the compensation at issue is the authorized salary of an established county directorship position, not a ghost job, and the Indictment alleges the parties discussed that position's salary. (Indict. ¶ 15; Indict. ¶¶ 17-18). Because the salary INDIVIDUAL 1 would have earned is bona fide compensation for a genuine public job paid in the usual course of business, § 666(c) removes it from the statute's reach, and to the extent the Government characterizes that salary as the corrupt thing of value, the safe harbor defeats the theory as a matter of law. 18 U.S.C. § 666; *United States v. Blagojevich*, 794 F.3d at 736.

## III. Counts Three and Four Fail because the Travel Act predicate offense of Missouri state Bribery is not satisfied.

Counts Three and Four charge Travel Act violations under 18 U.S.C. § 1952(a)(3) whose sole predicate "unlawful activity" is "bribery in violation of § 576.020 RSMo (public servant acceding to corruption)." (Indict. ¶32). If the alleged conduct is not bribery under § 576.020 RSMo, the Travel Act counts collapse for lack of a predicate offense.

### A. The Travel Act Counts Fail Derivatively When the Bribery Predicate Fails.

A Travel Act charge is only as strong as its predicate offense. Section 1952(a)(3) reaches the use of an interstate facility "with intent to … otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," followed by an act in furtherance of it. 18 U.S.C. § 1952. "Unlawful activity" is defined to include "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States." *Id*. Without a viable bribery offense, there is no unlawful activity to promote.

Counts Three and Four rest on the single predicate of "bribery in violation of RSMo. 576.020[,]" and re-alleges the same withdrawal-for-jobs conduct that underlies Counts One and Two. (Indict. ¶¶ 31-32; Indict. ¶ 29). For the reasons already stated, that conduct is political logrolling, not the swap of an official act for a private payment, so the predicate collapses. The label the Indictment attaches does not save the counts. As set out in *In re EpiPen Direct Purchaser Litig.*, "Not only does generic bribery include *payments* to public or private individuals 'to influence their actions,' but it also applies to *payments* that corrupt 'relations which are recognized in society as involving special trust." *In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827 (ECT/JFD), 2022 WL 1017770, at *5 (D. Minn. Apr. 5, 2022), quoting *Perrin v. United States,* 444 U.S. 37, 46 (1979). (Emphasis added).

Neither § 576.020 itself nor the Missouri Criminal Code's general definitions section at § 556.061 provides a specific statutory definition of "benefit." The Missouri Supreme Court observed in *State v. Scott* the legislature is not obliged to anticipate all possible situations in which public servants might try to use their official positions to secure private gratification. *State v. Scott,* 781 S.W.2d 64, 66 (Mo. 1989). However, none of the caselaw involves a "benefit" couched as candidate's withdrawal from a primary election as a basis for prosecution. Rather, the Missouri cases focus on cash and monetary payments, e.g., *State v. Horne,* 778 S.W.2d 756 (Mo App. 1989),

or sexual favors, e.g., *State v. Scott,* 781 S.W.2d 64 (Mo. 1989), and *State v. Young*, 42 S.W.3d 729 (Mo. App. 2001), or free services or labor, e.g. *State v. Wahby*, 775 S.W.2d 147 (Mo. 1989).

The county positions and salary the Indictment describes would be conferred on INDIVIDUAL 1 and a colleague, not on LeVota, and the only thing LeVota is alleged to have received is INDIVIDUAL 1's withdrawal from the race, which he expressly told INDIVIDUAL 1 was "not [in] return for anything." (Indict. ¶ 6; Indict. ¶ 21; Indict. ¶ 23). No Missouri decision treats the elimination of an electoral opponent as a "benefit" a public servant accepts within § 576.020. *State v. Walker*, 657 S.W.2d 704 (Mo. Ct. App. 1983) is distinguishable. The *Walker* court sustained a bribery conviction where the defendant "offered [the mayor] money and other benefits" for official action — a money benefit that flowed to the official — whereas here the salary and positions flow away from LeVota. *Walker,* 657 S.W.2d at 705. Because the Indictment does not allege that LeVota accepted a benefit for himself within the prescriptive reach of § 576.020, the Missouri predicate is not properly charged.

**B. Mo. Rev. Stat. 576.020 Is Broader Than Generic Travel Act Bribery so it Cannot Serve as the Predicate.**

In the alternative to the prescriptive reach argument, § 576.020 sweeps more broadly than generic bribery and so cannot supply the Travel Act predicate for this conduct. When a federal statute incorporates state law, "whether a state-law violation qualifies as a federal predicate depends on whether the state offense falls within that crime's generic definition." *United States v. Ferriero*, 866 F.3d 107, 115 (3d Cir. 2017). The Supreme Court has explicitly stated that bribery under the Travel Act means generic bribery. *Perrin v. United States*, 444 U.S. at 49. Applying that framework, the District of Minnesota dismissed Travel Act predicates at the pleading stage where the predicate offense's elements were broader than generic bribery, reasoning — quoting *Mathis v. United States*, 579 U.S. 500 (2016) — that a "crime cannot qualify as a [Travel Act] predicate

if its elements are broader than those of a listed generic offense." *In re EpiPen Direct Purchaser Litig.*, *supra*, at *5.

Arguably, the words used in Section 576.020 more broadly reach any "exercise of discretion," without the generic offense's requirement of a contemplated quid pro quo *tied to an official act*. Mo. Rev. Stat. § 576.020; *State v. Walker*, 657 S.W.2d at 705. The Ninth Circuit has recognized that a statute drawn this way is "broader than the Travel Act's generic definition of bribery." *United States v. Shen Zhen New World I, LLC*, 115 F.4th 1167, 1184 (9th Cir. 2024). That court ultimately allowed such a statute to serve as a predicate where the jury's findings conformed to the generic definition, but no such argument exists here because the overbroad Missouri statute cannot be presumed to yield a valid generic-bribery predicate for this political conduct.

## IV. Constitutional Avoidance, Vagueness, and Lenity Require Narrow Construction and Dismissal.

To the extent the Court views any charged statute as ambiguous when applied to a political trade of a public appointment for a campaign withdrawal, settled canons of construction require the narrower reading — one that does not reach ordinary politics — and therefore dismissal. The Supreme Court has repeatedly narrowed the prescriptive reach of the federal corruption statutes. It confined § 1346 in *Skilling* because a broader reading "would raise the due process concerns underlying the vagueness doctrine." *Skilling v. United States*, 561 U.S. at 408. And in *McDonnell v. United States* it adopted a narrow construction of the bribery laws because the Government's expansive reading "would raise significant constitutional concerns." *McDonnell v. United States*, 579 U.S. 550, 574 (2016).

Those concerns are acute here, where the Indictment criminalizes negotiations over a candidacy and prospective public appointments. (Indict. ¶ 2; Indict. ¶ 6). The *McDonnell* Court

warned that an expansive reading "could cast a pall of potential prosecution over these relationships," because "[t]he basic compact underlying representative government assumes that public officials will hear from their constituents and act appropriately on their concerns." *McDonnell v. United States*, 579 U.S. at 575. For that reason, the Court declined to "construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of good government for local and state officials." *McDonnell v. United States*, 579 U.S. 550. Section 666 in particular exists "to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery," not to police the ordinary give-and-take of local elections. *Sabri v. United States*, 541 U.S. 600 (2004) (quoting S. Rep. No. 98-225, at 370 (1983)).

The rule of lenity reinforces the same result. The Supreme Court has explained that using the constitutional avoidance canon to expand a criminal statute, as the Government there urged, "would also sit uneasily with the rule of lenity's teaching that ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor," while "[a]pplying constitutional avoidance to narrow a criminal statute, as this Court has historically done, accords with the rule of lenity." *United States v. Davis*, 588 U.S. 445, 464 (2019). "Respect for due process and the separation of powers suggests a court may not, in order to save Congress the trouble of having to write a new law, construe a criminal statute to penalize conduct it does not clearly proscribe." Id. at 464. Because §§ 1346, 666, and 1952 do not clearly proscribe a political appointment-for-withdrawal trade, the Court should construe them not to reach Mr. LeVota's alleged conduct and dismiss Counts One through Four. *Id*.

## CONCLUSION

For the foregoing reasons, Mr. LeVota respectfully requests that the Court dismiss Counts One, Two, Three, and Four of the Indictment for failure to state an offense.

Respectfully submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

By: /s/ JAMES R. HOBBS
JAMES R. HOBBS MO Bar 29732
MARILYN B. KELLER Mo Bar 39179
One Kansas City Place
1200 Main St., Suite 2110
Kansas City, MO 64105
Tel: (816) 221-0080
Fax: (816) 221-3280
jrhobbs@whmlaw.net
mbkeller@whmlaw.net

**ATTORNEYS FOR DEFENDANT LEVOTA**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of October, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/s/ James R. Hobbs
***Attorney for Defendant***